## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AUBREY E. CORPORAL,

    Petitioner,

    v.

HON. ALLEN GANG and
MARYLAND ATTORNEY GENERAL,

    Respondents.

Civil Action No.:  PWG-19-1795

## MEMORANDUM OPINION

Respondents' Court Ordered Response to this Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 seeks dismissal of the Petition because the sole claim raised was not exhausted in the State courts and, because Petitioner Aubrey Corporal no longer has an available avenue to present the claim to the State courts, an irreparable procedural default has resulted.  ECF No. 5.  On August 22, 2019, the Court granted Mr. Corporal 28 days to file a Reply, but he has filed nothing further.  ECF No. 7.  The issue has been fully briefed, and no hearing is necessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2018); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)).  For the reasons stated below, the Petition shall be dismissed and a certificate of appealability shall be denied.

## BACKGROUND

On April 4, 2006, Mr. Corporal was found guilty following a jury trial in the Circuit Court for Baltimore City, Maryland, on three counts of robbery with a deadly weapon, three counts of robbery, three counts of first-degree assault, three counts of second-degree assault, three counts of theft under $500, and three counts of theft under $100.  ECF No. 5-1 at 59 (Unreported Decision

of Md. Court of Spec. App.).[1]  The court sentenced Mr. Corporal to three consecutive terms of 15

years each for a total of 45 years.  *Id.*

       The facts established at trial were summarized by the Court of Special Appeals in an

unreported opinion as follows:

> At approximately 11:00 p. m. on October 6, 2005, Loyola College students
> Alexander Hutter and John Curran went to Murphy's Bar and Grill in the 5900
> block of York Road in Baltimore.  Soon after they arrived, they received a call
> from their friend, Ryan Quinn, who announced that he had just arrived from
> Philadelphia.  Hutter and Curran exited the bar and entered the nearby parking
> lot to meet with Quinn who was driving into the parking lot in his vehicle.  Once
> parked, Quinn advised that he wanted to go to the college campus to clean up
> after his drive.  Quinn exited his car and opened the rear passenger side door to
> retrieve a jacket.  Curran entered the front passenger seat and Hutter entered the
> rear driver's side passenger seat.  As Quinn retrieved his jacket, he was
> approached by appellant who asked if he had a lighter.  When Quinn responded
> that he did not, appellant asked if Quinn's friends inside the car had one.  Quinn
> then turned his attention to Hutter and Curran seated in the car and asked if they
> had a lighter.  Just then, appellant stuck a gun to Quinn's waist and told him to
> give him money.  Quinn put his hands up in the air, and appellant went through
> Quinn's pants pockets, whereupon Quinn told appellant that his wallet was in the
> car. Hutter then exited the car and put his hands up in the air.  Appellant pointed
> the gun at Hutter, and Curran then exited the car.  Hutter and Curran gave their
> wallets to appellant, and Quinn entered the car, retrieved his wallet, and held it
> up for appellant. Quinn then took approximately $70 from his wallet and gave it
> to appellant. Quinn and appellant then "tussled" with the wallet before appellant
> turned and ran away.
>
> During the robbery, Officer Louis Nanna and his partner Keith Rowe of
> the Baltimore City Police Department were in an unmarked police vehicle
> patrolling the 5800-6000 block of York Road.  As they came upon a parking lot
> near Murphy's Bar, they saw Hutter, Quinn, and Curran with their backs to them
> standing with their hands raised.  As they continued to watch, they saw a man
> standing directly in front of them who appeared to be talking "very adamant[ly]"
> at the three men with their hands up.  Believing they were witnessing a robbery
> in progress, Officer Nanna stepped out of the police vehicle near a field
> bordering the parking lot.  Officer Rowe remained in the vehicle and continued
> down the block in an effort to pin the robber in.  As Officer Nanna crossed the
> field, he observed the robber begin to run away from the three men.  Officer
> Nanna began to chase the robber, identified himself as a police officer, and
> yelled for him to stop.  The robber continued to run away, and while running,

---

[1]     The referenced page numbers herein refer to the number reported in the ECF document; here, it is equivalent
to SR 57.  *See* State Record (SR), ECF No. 5-1.

pointed something in the direction of Officer Nanna, who believed it to be a gun. The robber got into a vehicle that was parked nearby. The vehicle then sped away from the scene, and Officer Rowe attempted to pursue it, but was unable to stop the vehicle. Officers Nanna and Rowe then returned to talk to the three victims in the parking lot as did a number of other responding police officers, including Detectives Tom Wolf and Myrna Sexton.

In the days after the robbery, Detectives Wolf and Sexton received information from the Baltimore County Police Department regarding a suspect they had developed in a separate case. The Baltimore County suspect matched the description of the robber given by Hutter, Curran, and Quinn. The suspect was appellant, whose photo was placed in a photo array, and ultimately identified by Hutter and Curran as the person who had robbed them.

ECF No. 5-1 at 59-61.

A pre-trial hearing on a defense motion to suppress the photo-array identification was held on March 30, 2006. ECF No. 5-2 (transcript). Alexander Hutter and John Curran were the two victims who identified Mr. Corporal as their assailant in the photo-array and both testified at the pre-trial hearing. Mr. Hutter explained he was contacted on October 12, 2006 by police because they wanted to show him a photo-array. He met with Detectives Wolf and Sexton on the Loyola campus, outside of his dorm. Mr. Hutter testified that prior to looking at the photographs, Detective Sexton asked him to read the instructions at the top of the photo-array. Mr. Hutter was then asked to look at the photos and to indicate if he recognized the person who had robbed him. Upon viewing the photographs, Hutter identified Mr. Corporal as the assailant within a few seconds. Mr. Hutter explained that he was able to recognize Mr. Corporal as the man who had robbed him and his friends because he was "face-to-face" with him during the robbery. Mr. Hutter testified that Detective Wolf asked him to relay a message to John Curran that Mr. Curran should contact the police; Mr. Hutter recalled that Detective Wolf instructed him not to talk to Mr. Curran about the details of the photo array he had been shown.

3

According to Mr. Curran's testimony at the pre-trial hearing, Mr. Hutter, who was his roommate at the time, told him he had identified someone in the photo array but did not tell Mr. Curran who he had identified.  Mr. Curran met with Detectives Wolf and Sexton at the Cold Spring Lane police station to view the photo array.  When asked if he could identify any of the persons pictured as the person who had robbed him, Mr. Curran testified that he immediately recognized Mr. Corporal as his assailant within seconds of viewing the photographs.  Mr. Curran and Mr. Hutter testified that the detectives never indicated to them that one of the men pictured was a suspect nor did they suggest which picture they should choose.

In denying the motion to suppress, the Circuit Court commented that:

> Of the six photographs, all six individuals are African-American males of similar complexion and hairstyle. The photograph of the defendant appears to be the only photograph in which an individual is wearing a black T-shirt. However, four of the six individuals are wearing black – strike that – dark-colored tops, which are almost indistinguishable from the black T-shirt worn by [defendant].
>
> Similarly, there's been no testimony about any impermissible suggestiveness used with respect to the police officer and the manner in which they displayed the photographs to Mr. Hutter. The motion with respect to Mr. Hutter is denied on all grounds.
>
> As to John Curran, the allegation is that the photographic array displayed was suggestive because the police officers told Mr. Hutter, or told Mr. Curran that there was a suspect, his roommate told him that he had viewed a photographic array earlier and picked out a suspect, and Mr. Curran remembered in his testimony in court that the description given was that of a person wearing a black T-shirt.
>
> With respect to the Baltimore City police detectives or the Loyola officer telling Mr. Curran that they had a suspect, I adopt the argument of the Assistant State's Attorney that that does not constitute impermissible suggestiveness.
>
> Clearly, in depicting or showing a photographic array to a suspect, it is implicit that there may be a suspect in the array.  The acknowledgment at the top of the photographic array advises the individual that the person who committed the offense may be contained on the photographic array.  There is absolutely no allegation that the Baltimore City police detectives pointed out, suggested who

4

the suspect might have been, gave a description of the suspect, or in any way directed Mr. Curran to pick the photograph of the defendant, merely, that he was advised by them that there was a suspect in the case. With respect to the information from Mr. Hutter to Mr. Curran that Mr. Hutter had viewed a photographic array and that he had made an identification, this is simply not State action that can be imputed to the Baltimore City Police Department, nor is it action that would constitute unnecessary or impermissible suggestiveness if it could be imputed to the police officers.

Mr. Hutter is a private citizen. Even if he had called Mr. Curran and indicated, I picked the photograph in the upper right-hand corner, which he did not, this would not constitute impermissible suggestiveness by the Baltimore City police officers. So this is a private citizen who merely communicates to another that he made a selection. One, it is not police action; two, the content of his communication was not impermissibly suggestive because, as the Assistant State's Attorney pointed out, he didn't tell Mr. Curran who he picked, the location of the photograph or anything about the content of the photographic array.

ECF No. 5-2 at 60-62.

In his May 16, 2016 post-conviction petition, Mr. Corporal asserted that trial counsel was ineffective for failing to file a direct appeal. ECF No. 1 at 3. The Circuit Court for Baltimore City granted relief on October 18, 2017 by allowing Mr. Corporal to file a belated direct appeal. ECF No. 5-1 at 9, 18 and 28.

In his direct appeal, Mr. Corporal alleged that the identification procedures were improperly suggestive. ECF No. 5-1 at 59. He claimed that police told the witnesses that the suspect was among those depicted in the photo array; that among those who were depicted, he was the only one wearing a dark t-shirt; and one of the witnesses may have told the other witness which picture he should pick from the array as their assailant. *Id.* The Court of Special Appeals affirmed Mr. Corporal's convictions. *Id.* at 59-65. Mr. Corporal's petition for writ of certiorari filed with the Maryland Court of Appeals was denied on January 18, 2019. *Id.* at 10, 19-20, 29, *see also Corporal v. State*, 462 Md. 264 (2019) (Table).

5

Mr. Corporal raises only one claim in the petition filed with this Court. He states that "[t]here was absolutely no pre-trial description given," but the in-court identifications were credited despite three eyewitnesses and one police officer never giving any description of the perpetrator. ECF No. 1 at 5.

## DISCUSSION

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted); *see also White v. Woodall,* 572 U.S.415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)) ("[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2)

"confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 785 (quoting *Williams*, 529 U.S. at 410).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly*." Renico v. Lett,* 559 U.S 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section

2254(e)(1)." *Id.* at 379.  Absent violation of a constitutional right or federal law, petitioner fails to state a cognizable claim for relief. *Wilson v. Corcoran*, 562 U.S. 1, 1 (2011) (holding that "courts may not issue writs of habeas corpus to prisoners whose confinement does not violate federal law."); *Spencer v. Murray*, 18 F.3d 237, 239-40 (4th Cir. 1995) (holding that where a petitioner alleged error in admissibility of evidence, without reference to any constitutional right infringed, petitioner failed to state a claim).

Mr. Corporal's sole claim calls upon this Court to re-examine the credibility of the witnesses who identified him as the perpetrator in a photographic array and also identified him at trial.  Such a credibility determination is not subject to this Court's review.  "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams*, 529 U.S. at 437.  "The role of a federal habeas court is to 'guard against extreme malfunctions in the state criminal justice systems,' not to apply *de novo* review of factual findings and to substitute its own opinions for the determination made on the scene by the trial judge." *Davis v. Ayala*, 576 U.S. 257, 276 (2015) (quoting *Richter*, 562 U.S. at 102–103).  Mr. Corporal's attack on the credibility of the identification evidence is based on the absence of a pre-trial description of the perpetrator; his claim does not implicate a Constitutional violation, nor does it state a claim entitling him to federal habeas relief.

To the extent that Mr. Corporal's federal habeas claim differs from the claim he raised on direct appeal, the claim is unexhausted. *See Gray v. Netherland*, 518 U.S. 152, 163 (1996) (stating that a general claim of due process violation is too broad for purposes of presenting the substance of the claim to state court).  Thus, Mr. Corporal cannot claim here that he has exhausted a federal due process claim that was implied by the claim he asserted on direct appeal.  There has been no consideration of a federal due process claim that Mr. Corporal's trial was so fundamentally unfair

that it violated the Fourteenth Amendment. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)) (observing that the sole question for a federal habeas court is whether the alleged error "so infected the entire trial that the resulting conviction violates due process.").

Even if Mr. Corporal could demonstrate that the State courts considered his claim and that he framed his claim as one implicating constitutional protections, the claim lacks any basis in fact. The trial transcripts demonstrate that both Mr. Hutter and Mr. Curran provided descriptions of their assailant to the police shortly after the robbery occurred. ECF No. 5-2 at 13, 33. The victims' recollection was also confirmed by Detective Wolf who testified that they did in fact describe the suspect. ECF No. 5-3 at 199. Additionally, Mr. Corporal's counsel on direct appeal acknowledged that there was a pre-trial description by one of the victims stating that the perpetrator was wearing a black t-shirt. ECF No. 5-1 at 48. The sole claim raised by Mr. Corporal in his petition is simply without merit and demonstrably false. The Petition for Writ of Habeas Corpus must be dismissed.

An additional consideration is whether this Court should issue a certificate of appealability. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S. Ct. 759, 773 (Feb. 22, 2017). "[T]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U. S. C. § 2253(c)(2). Petitioner may still request that the United States Court of Appeals for the Fourth Circuit issue

such a certificate.  *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## CONCLUSION

In accordance with this Memorandum Opinion, a separate Order dismissing the Petition for Writ of Habeas Corpus and denying a certificate of appealability follows.

___December 7, 2020___                         _____/S/_____
Date                                           Paul W. Grimm
                                               United States District Judge